[Civ. No. 1060.   Second Appellate District.—May 19, 1913.]

ANNA K. BROWN, as Executrix, Substituted for D. R. BROWN, Respondent, v. C. W. BRASHEAR, Appellant.

NEGLIGENCE — OPERATION OF AUTOMOBILE — COLLISION WITH PERSON AFTER HE HAS ALIGHTED FROM STREET-CAR.—In this action against the owner of an automobile by a person who was struck by it after having alighted from a street-car, the question of the defendant's negligence and the plaintiff's contributory negligence was, under the evidence, for the jury.

ID.—CARE IN OPERATING AUTOMOBILE—INSTRUCTIONS.—If the evidence introduced by the defendant shows that the plaintiff jumped from a moving street-car and ran in front of defendant's automobile following the car, it was error to refuse an instruction that "the defendant was not called upon to drive his car so as to protect passengers on the street-car who might see fit to jump from the car while it was in motion, unless and until he had warning that the passenger did intend to jump from the street-car while in motion."

ID.—USE OF STREETS—RELATIVE DUTIES OF PEDESTRIANS AND DRIVERS OF VEHICLES.—Persons alighting upon or walking across public streets where vehicles are constantly traveling to and fro must use ordinary care to see that they do not collide with or are run over by vehicles, and in turn it is the duty of the drivers of vehicles to exercise ordinary care to prevent any injury being caused to such foot passengers.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. W. M. Conley, Judge presiding.

The facts are stated in the opinion of the court.

E. T. Sherer, Emmet H. Wilson, and Edwin A. Meserve, for Appellant.

H. K. Norton, and E. B. Drake, for Respondent.

JAMES, J.—Plaintiff was awarded a judgment for the sum of $1,391 following the verdict of a jury, as damages for personal injuries received by him through the alleged negligence of defendant. A motion was made for a new trial and denied, and this appeal was then taken from that order and also from the judgment as entered.

About the fifteenth day of February, 1910, at about the hour of 6:30 P. M., plaintiff alighted from a trolley car on West Pico Street at Elden Avenue in the city of Los Angeles. Pico Street at that point runs approximately east and west and Elden Avenue intersects it from the north at right angles. Plaintiff's home was located about one-half block north of Pico on the west side of Elden. On the evening in question the car, traveling westerly on Pico, was stopped by the operatives thereof at the usual point at the east side of Elden to discharge passengers. The car was brought to a complete stop, several passengers alighted and it then started on its way. When it had progressed from one-half to two-thirds of the way across Elden the plaintiff swung himself off from the moving car and a moment afterward was struck by an automobile which approached him from the east and which was consequently traveling in the same direction as was the car from which he had just alighted. There was no dispute as to these facts. Plaintiff, however, contended that before alighting from the moving car he looked backward over his shoulder in the direction from which the automobile came, and that he saw no automobile and that he could have seen it had one been within a distance of one hundred feet; that he saw a team of horses and the outline of a wheel, but no automobile nor any headlights of an automobile; that he did not hear the sound of a horn or any signal of warning before he was struck. On the other hand, the defendant testified that he was driving a light automobile and that he was traveling in the rear of the car; that when the car stopped at Elden Avenue he stopped his machine also in order to allow pas-

sengers to reach the sidewalk in safety, and that after all of
the passengers had left the car and the car had started on its
way he started up his automobile and proceeded to travel after
the car and in the regular driveway between the right of the
northerly track and the curb line; that when he had about
crossed Elden Avenue plaintiff swung himself down suddenly
from the moving car and ran directly in front of the auto-
mobile, where he was struck and knocked down. Defendant
further testified that at the time his machine struck the plain-
tiff he was only traveling about six miles an hour, as he had
not gained full headway after waiting for the passengers to
clear the street. A passenger on the car testified to having
seen the automobile following the car, and in general gave tes-
timony corroborative of that of the defendant. As a result
of being struck by the automobile the plaintiff sustained seri-
ous physical injuries which incapacitated him from pursuing
his regular employment for a long time.

While it is insisted on the part of appellant that the evi-
dence was insufficient to show any negligent act committed by
defendant and that, on the contrary, it was shown that plain-
tiff's injuries were caused by his own negligence, the evidence
as it is shown in the record presents a case where it may be
said that there was some conflict, and that under all of the cir-
cumstances shown in the testimony the questions as to defend-
ant's negligence and as to plaintiff's contributory negligence
were for the jury to determine. If, in the judgment of the
trial court, the evidence was insufficient to warrant a verdict
in favor of plaintiff, then the trial judge should have granted
the motion for a new trial, but under the state of the record
this court cannot substitute its judgment for either that of
the jury or the trial judge. If the statement of the occurrence
as contained in defendant's testimony was in accordance with
the facts, then no negligence at all would be shown as charge-
able against defendant, and a case would be presented where
the automobile driver, having exercised ordinary care to avoid
injuring passengers disembarking from a car, caused injury
to a person who, without exercising due care for his own
safety, planted himself in front of the moving automobile
suddenly and in such a manner as to make it impossible for
the defendant to avoid injuring him. Many of the circum-
stances shown in proof tended strongly to corroborate the

claim of the defendant as to the manner in which the accident occurred. The jury, if they adopted plaintiff's statement, must necessarily have inferred that because plaintiff looked toward the rear and did not see the automobile before alighting from the moving car, that the automobile must have been traveling at a high rate of speed in order to have injured plaintiff. If the jury concluded that defendant should have sounded a horn or given an alarm announcing his approach, they must have determined that defendant observed the plaintiff in the street in time to have made such warning of some avail. Under such a state of the case it became important that the relative rights of the pedestrian and driver of the vehicle should have been clearly stated to the jury, and in this connection it would seem that the trial court erred in refusing an instruction offered by defendant and marked in the transcript as No. 3. The court did instruct generally to the effect that both the pedestrian and the driver of the vehicle were required to exercise ordinary care in their conduct while upon the street in order to avoid doing damage or injury to each other. The instruction which was refused was worded as follows: "The defendant was not called upon to drive his car so as to protect passengers on the street-car who might see fit to jump from the car while it was in motion, unless and until he had warning that the passenger did intend to jump from the street-car while in motion." While the jury were told that the defendant was required to exercise ordinary care in the management of his automobile, they were nowhere told, as defendant desired to have them instructed by the offered instruction, as to the defendant's right to assume that a passenger would not alight from a moving car (and especially a car which had just stopped to discharge passengers and was commencing to proceed upon its way). The instruction was directed to a point very important to the defendant in having the law properly applied to the facts by the jury, and it may have been that the jury in their own judgment concluded it to have been the defendant's duty to so manage his car as to protect passengers who might jump from the street-car between the regular stops, and that it was the duty of the defendant to anticipate such possible action on the part of the passengers. If the jury did so assume, they entertained a mistaken apprehension as to the law. The instruction offered by defendant seems to contain

a proper statement of the law as applicable to the facts in dispute at the trial, and the defendant should have had whatever benefit its consideration by the jury might have furnished him. Persons alighting upon or walking across public streets where vehicles are constantly traveling to and fro must use ordinary care to see that they do not collide with or are run over by vehicles, and in turn it is the duty of the drivers of vehicles to exercise ordinary care to prevent any injury being caused to such foot passengers. It has been stated as the settled rule that the requirements as to the conduct of both the pedestrian and the driver of a vehicle are reciprocal and equal and that neither has any right of way superior to the other. (See *Niosi* v. *Empire Steam Laundry,* 117 Cal. 257, [49 Pac. 185], and decisions therein referred to.)

Because of the error of the court in refusing to give the instruction hereinbefore referred to, the motion for a new trial should have been granted.

The judgment and order are reversed.

Allen, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 18, 1913.